**John BUSKEY, et al., Plaintiffs,**

**Donald V. Watkins, Plaintiff-Intervenor,**

v.

**Luther L. OLIVER, et al., Defendants.**

**Civ. A. No. 81–557–N.**

United States District Court, M.D. Alabama, N.D.

Aug. 22, 1983.

Solomon S. Seay, Jr., Montgomery, Ala. (Gray, Seay & Langford, Montgomery, Ala.), for plaintiffs.

G. Dennis Nabors, Ball, Ball, Duke & Matthews, George B. Azar, Azar, Campbell & Azar, and H. Al Scott, Montgomery, Ala., for defendants.

Donald V. Watkins, pro se.

OPINION

MYRON H. THOMPSON, District Judge.

On June 10, 1983, this court enjoined the defendants, the City of Montgomery, the city mayor, and several members of the city council, from holding any elections pursuant to City Ordinance No. 47–81, which redrew city council districts. The evidence before the court reflected and this court found that the reduction in the black voting age population in council district 3, effected by the city's redistricting plan, was not inadvertent, but was intentionally done to dilute the voting strength of the black population in the district. The court, therefore, concluded that the city's redistricting plan was the product of purposeful racial discrimination, in violation of section 2 of the Voting Rights Act of 1965, as amended in 1982, 42 U.S.C.A. § 1973 (West Supp. 1983). Buskey v. Oliver, 565 F.Supp. 1473 (M.D.Ala.1973).

This case is now before the court on the defendants' June 21, 1983, motion to stay, as amended. By the motion, the defendants request that the court stay enforcement of its injunction pending appeal and allow the city to proceed with elections, now set for October 11, 1983, under the redistricting plan. At the request of the

parties, the motion was not deemed submitted to the court for consideration and disposition until August 16, 1983.

In *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court was confronted with a statewide legislative plan found to be in violation of the one-person one-vote requirement of the fourteenth amendment to the United States Constitution. The following language from *Reynolds v. Sims* applies with equal force to the circumstances now before this court:

> It is enough to say now that once a ... legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan.

377 U.S. at 585, 84 S.Ct. at 1393. Moreover, given the pervasive and protracted history of official invidious racial discrimination against the City of Montgomery's black citizens, a history from which the city's black citizens still suffer deeply, it would be, absent some exigent and unusual circumstances beyond the defendants' control, nothing less than a painful and unnecessary blow upon a wound to require that these black citizens again suffer the indignity and imposition of official invidious racial discrimination, as evidenced in the city's redistricting plan. Such unusual and exigent circumstances are not present in this case.

In its June 10, 1983, opinion, this court concluded that

> since devising redistricting plans "is a legislative task which the federal courts should make every effort not to pre-empt," *Wise v. Lipscomb*, 437 U.S. 535, 539, 98 S.Ct. 2493, 2497, 57 L.Ed.2d 411 (1978), the court will afford the City of Montgomery an opportunity to fashion, enact, and submit to the court a new redistricting plan free of the discriminatory purpose or result proscribed by section 2. Of course, before any new plan is submitted to the court by the defendants,

> it must be precleared pursuant to section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c.

565 F.Supp. at 1485. It is also apparent from the evidence now before the court that only one or two days' work would be required to modify the city's plan to make it acceptable. Nevertheless, it is now more than two months since this court found the city's plan unacceptable, and the defendants have failed to submit *any* plan, let alone an acceptable one, to the court. The defendants are therefore not now in a credible position to claim that the present circumstances, brought about by their own failure to act, warrant use of their defective redistricting plan. Their motion for stay is due to be denied.

Nevertheless, city elections are imminent, the city is without an acceptable redistricting plan, and the city has, in effect, abdicated its responsibility for drafting an acceptable plan. Under these circumstances, this court must reluctantly assume the responsibility of fashioning an acceptable plan. The court's remedial authority to fashion a court-ordered plan is, however, not unlimited. In fashioning a court-ordered plan, "a district court should not pre-empt the legislative task nor 'intrude upon state policy any more than necessary.'" *White v. Weiser*, 412 U.S. 783, 795, 93 S.Ct. 2348, 2355, 37 L.Ed.2d 335 (1973) (*quoting Whitcomb v. Chavis*, 403 U.S. 124, 160, 91 S.Ct. 1858, 1878, 29 L.Ed.2d 363 (1971)). Thus, in *Upham v. Seamon*, 456 U.S. 37, 102 S.Ct. 1518, 71 L.Ed.2d 725 (1982), the Supreme Court, confronted with a court-ordered plan for a state legislature, cautioned that:

> Whenever a District Court is faced with entering an interim reapportionment order that will allow elections to go forward it is faced with the problem of "reconciling the requirements of the Constitution with the goals of state political policy." *Connor v. Finch*, 431 U.S. [407] at 414, 97 S.Ct. [1828] at 1833 [52 L.Ed.2d 465 (1977)]. An appropriate reconciliation of these two goals can only be reached if the District Court's modifica-

tions of a state plan are limited to those necessary to cure any constitutional or statutory defect.

456 U.S. at 43, 102 S.Ct. at 1522. Similarly, in fashioning a redistricting plan for the City of Montgomery, this court is limited to modifying the city's present plan to the extent necessary to remedy the statutory defect, no more and no less.[1]

Furthermore, in *White v. Weiser, supra,* the Supreme Court confronted with a court-ordered Congressional plan for a state, cautioned that:

> Just as a federal district court, in the context of legislative reapportionment, should follow the policies and preferences of the State, as expressed in statutory and constitutional provisions or in the reapportionment plans proposed by the state legislature, whenever adherence to state policy does not detract from the requirements of the Federal Constitution, we hold that a district court should similarly honor state policies in the context of congressional reapportionment.

412 U.S. at 795, 93 S.Ct. at 2355. Similarly, in fashioning a court-ordered plan, this court must adhere to the City of Montgomery's legitimate policies and preferences in the context of redistricting. Any plan fashioned by the court must therefore retain each incumbent council member's residence in his or her district, maximize the racial majorities in each district, and comply with the requirement of one-person one-vote.[2]

In an effort to meet the preceding specifications, the court will adopt the following procedure. First, the plaintiffs will be directed to submit to the court by August 25, 1983, a plan that meets the preceding specifications; and the defendants will be al-lowed until August 29, 1983, to submit suggested modifications of the plaintiffs' plan. Second, since the fashioning of redistricting plans remains at all times a legislative task, the court will allow the defendants a second opportunity to submit an acceptable plan to the court. The defendants will be allowed until August 25, 1983, to submit an acceptable plan; and, if a new plan is submitted, the plaintiffs will be allowed until August 29, 1983, to submit suggested modifications of the city's new plan.[3] Any suggested modifications submitted to the court should be accompanied by a written explanation of why the modifications are needed.

An appropriate order will be entered in accordance with this opinion.

1. The court is unwilling to accept the Reed or Peak plans at this time. *See* 565 F.Supp. at 1479. The court is concerned that, although these plans remedy the statutory defects in the city's plan, they *may* also reflect unnecessary political factors.

2. Even in the absence of the city requirement of one-person one-vote, there would be the constitutional requirement of one-person one-vote.

3. The court is aware that any plan submitted by the city must be precleared by the United States Justice Department and that preclearance usually takes 60 days. 42 U.S.C.A. § 1973c. The court is also aware, however, that the Justice Department is usually willing to cooperate in expediting preclearance when there is an impending election.